UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MARIA ALICIA CORDON,<br><br>      Plaintiff,<br><br>  vs.<br><br>WACHOVIA MORTGAGE, A DIVISION OF WELLS FARGO BANK, N.A., FORMERLY KNOWN AS WORLD SAVINGS BANK FSBM AND GOLDEN STATE FINANCING,<br><br>      Defendants. | Case No:  C 09-5333 SBA<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS AND DENYING DEFENDANTS' MOTION TO STRIKE PORTION OF THE FIRST AMENDED COMPLAINT**<br><br>Docket 32, 33 |

Plaintiff Maria Alica Cordon brings the instant action against Wachovia Mortgage ("Wachovia"), claiming that its predecessor, World Savings Bank FSB ("World Savings"), and mortgage broker Golden State Financing ("GSF") defrauded her in connection with the refinancing of her home mortgage. The parties are presently before the Court on Wachovia's Motion to Dismiss and Motion to Strike Portions of Plaintiff's First Amended Complaint ("FAC"). Dkt. 32, 33.[1] For the reasons stated below, the motion is dismiss is GRANTED IN PART and DENIED IN PART and the motion to strike is DENIED. The Court, in its discretion, finds this matter suitable for resolution without oral argument. See Fed. R. Civ. P. 78(b); N.D. Cal. Civ. L.R. 7-1(b).

---

[1] Wachovia is alleged to be a division of Wells Fargo Bank, which also is named as a Defendant.  FAC ¶ 2.  References to Wachovia in this Order shall be deemed to include Wells Fargo Bank.

## I. BACKGROUND

### A. FACTUAL SUMMARY

Plaintiff, the owner of property located at 2741-14th St., San Pablo, California ("the Property"), alleges that she was the victim of a fraudulent mortgage refinancing scheme orchestrated by World Savings. FAC ¶¶ 1, 20. According to Plaintiff, GSF personnel were trained by World Savings to target elderly and non-English speaking individuals to place them into high interest, negative amortization loans that could be "dumped" in the secondary mortgage market. Id. ¶ 19. The existence of such practices allegedly was corroborated by Paul Bishop, a former World Savings executive, during an interview with 60 Minutes. Id. ¶ 19. Consistent with World Savings' purported predatory loan practices, GSF agents completed a loan application on Plaintiff's behalf. Id. ¶ 10. Unbeknownst to Plaintiff, GSF misrepresented her employment and income so that she would qualify for the loan. Id. ¶¶ 8, 10. At GSF's direction, Plaintiff signed the loan documents, which were not explained to her. Id. ¶¶ 9-10. Though GSF only communicated to Plaintiff in Spanish, it did not provide her with any Spanish-translated documents nor did it advise her of her right to obtain such translations. Id. ¶ 8.

On or about August 31, 2006, Plaintiff obtained an adjustable rate mortgage from World Savings in the sum of $455,000, which was secured by a Deed of Trust on the Property. Def.'s Request for Judicial Notice ("RJN"), Ex. F, Dkt. 34. Instead of receiving a "better loan" as promised, Plaintiff was placed into a negative amortization loan containing an interest cap of almost 12 percent. Id. ¶ 20. On a date not specified in the pleadings, Wachovia, as the successor to World Savings, accused Plaintiff of defaulting on her mortgage payments, though she denies that was the case. Id. ¶ 12. Plaintiff was able to avoid foreclosure, however, by entering into a loan modification agreement with Wachovia on or about August 29, 2009. Id. Plaintiff alleges that the modification "did not fully compensate [her] for any of the damage she incurred between her application and the date of her loan modification." Id. ¶ 15. As a result, Plaintiff filed the instant action against Wachovia in state court on August 31, 2009. Notice of Removal, Dkt. 1. On November

1  12, 2009, Wachovia removed the action on the grounds that the Court has original
2  jurisdiction over Plaintiff's Truth in Lending Act ("TILA") and the Real Estate Settlement
3  Procedures Act ("RESPA") claims.
4       On April 9, 2010, Plaintiff filed a FAC, in which she eliminated her TILA and
5  RESPA claims.  The FAC now alleges three state law causes of action for:  (1) fraud;
6  (2) unfair business practices under the UCL[2]; and (3) an accounting.  Dkt. 31.  The UCL
7  claim consists of three subparts.  The first subpart is based on the wrongful refusal to
8  rescind under TILA, while the second subpart alleges wrongful credit reporting under
9  RESPA and/or TILA.  Both of these UCL claims are alleged against Wachovia.  The third
10 UCL claim alleges that GSF failed to provide a Spanish translation of the loan documents,
11 as required by California Civil Code § 1632.
12      Wachovia has now filed a motion to dismiss the FAC in which it contends that each
13 of Plaintiff's claims is preempted by the Homeowners' Loan Act of 1933 ("HOLA"), or
14 alternatively, that each claim is deficiently pled.  In addition, Wachovia filed a separate
15 motion to strike certain of Plaintiff's allegations.  In her opposition, Plaintiff argues that the
16 Court should remand the action because she has dismissed her TILA and RESPA claims.
17 Plaintiff also denies that her causes of action are preempted by HOLA and argues that she
18 otherwise has alleged plausible claims.  Subsequent to the close of briefing, the Court
19 issued an Order to Show Cause Re: Remand, in which it directed Wachovia to show cause

---

[2] Plaintiff's second cause of action is entitled Unfair Business Practices.  Although the allegations comprising this case provide no statutory references, it undoubtedly is based on California Business & Professions Code § 17200, better known as California's Unfair Competition Law ("UCL").

why the instant action should not be remanded. Wachovia submitted a memorandum in response to the Order to Show Cause.[3]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6) a district court must dismiss a complaint if it fails to state a claim upon which relief may be granted. To survive a motion to dismiss for failure to state a claim, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). When considering a motion to dismiss under Rule 12(b)(6), a court must take the allegations as true and construe them in the light most favorable to plaintiff. In deciding a Rule 12(b)(6) motion, the court "may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice[.]" Williston Basin Interstate Pipeline Co. v. An Exclusive Gas Storage Leasehold and Easement in the Cloverly Subterranean, Geological Formation, 524 F.3d 1090, 1096 (9th Cir. 2008). The court is to "accept all factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group, Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). If the complaint is dismissed, plaintiff generally should be afforded leave to amend unless it is clear the complaint cannot be saved by amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

---

[3] Plaintiff has not served GSF, which she believes was suspended or dissolved in 2004. See Joint Case Mgmt. Stmt. at 1, Dkt. 38. Under Federal Rule of Civil Procedure 4(m), "[i]f service of the summons and complaint is not made on a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time…." The 120 day deadline to serve GSF has long since passed. Thus, within fourteen days of this Order, Plaintiff shall effect service on GSF and file a Certificate of Service with the Court. Should Plaintiff fail to do so, GSF will be dismissed from the action without prejudice.

## III. DISCUSSION

### A. SUBJECT MATTER JURISDICTION

Before deciding any issue on the merits, a district court has an independent obligation to examine its subject matter jurisdiction. Valdez v. Allstate Ins. Co., 372 F.3d 1115, 1116 (9th Cir. 2004). "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. The "arising under" qualification of § 1331 confers district courts with jurisdiction to hear "[o]nly those cases in which a well-pleaded complaint establishes either that [1] federal law creates the cause of action or that [2] the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." Armstrong v. N. Mariana Islands, 576 F.3d 950, 954-55 (9th Cir. 2009) (internal quotations omitted). In other words, the federal law must be a "necessary element" of the state law claim. Id.

In its response to the Order to Show Cause, Wachovia argues that Plaintiff's Unfair Business Practices cause of action should not be construed as a § 17200 claim under the UCL because the FAC does not make specific reference to the statute. Def.'s Response to OSC at 3, Dkt. 41. This argument is somewhat dubious given that in its motion to dismiss, Wachovia specifically argues that Plaintiff "fails to state a claim under Cal. Bus. & Prof. Code § 17200." Def.'s Mot. at 12. In any event, the Court agrees that Plaintiff's causes of action under the UCL are sufficient for purposes of establishing jurisdiction under § 1331. Plaintiff's claim that Wachovia wrongfully refused to rescind her loan is dependent on whether Wachovia violated TILA. Likewise, Plaintiff's companion claim that Wachovia wrongfully reported her to credit agencies relies on a finding that Wachovia violated RESPA and/or TILA. Because the success or failure of Plaintiff's UCL claims is contingent upon violations of federal law, the Court finds that subject matter jurisdiction is present with respect to the FAC. The Court now turns to Wachovia's motion to dismiss.

### B. FIRST CAUSE OF ACTION FOR FRAUD

"'The elements of fraud, which give rise to the tort action for deceit, are (a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge

of falsity (or "scienter"); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage.'" See Lazar v. Superior Court, 12 Cal.4th 631, 638 (1996) (citations omitted).  In her first cause of action for fraud, Plaintiff alleges that World Savings: (1) trained WSB's agents to "push its loans" and to "amend [loan] applications to comply with the underwriting standards demanded by the secondary mortgage market, where they immediately dumped the 'toxic waste' loans they originated"; and (2) failed to disclose the negative amortization component of Plaintiff's loan in order to "induce [her] to take the loan, which was consistent with [World Savings and GSF's] claims that it was a 'better loan than she had.'"  See FAC ¶¶ 19-24.

Wachovia contends that Plaintiff's fraud claim is preempted by HOLA.[4]  HOLA was enacted in 1933 to govern the activities of federal savings associations. See Silvas v. E*Trade Mortgage Corp., 514 F.3d 1001, 1004 (9th Cir. 2008).  "HOLA created what is now the OTS [Office of Thrift Supervision] for the purpose of administering the statute, and it provided the OTS with 'plenary authority' to promulgate regulations involving the operation of federal savings associations."  State Farm Bank v. Reardon, 539 F.3d 336, 342 (6th Cir. 2008). Pursuant to this authority, the OTS issued 12 C.F.R. § 560.2, which provides:

> (a) Occupation of field.  Pursuant to sections 4(a) and 5(a) of the HOLA, 12 U.S.C. 1463(a), 1464(a), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities ....

Id. § 560.2(a).  The effect of this express preemption clause is to virtually occupy the entire field of lending-related activities of qualifying lending associations, thus leaving no room

---

[4] Wachovia also contends that Plaintiff has failed to allege her fraud claim with particularity under Rule 9(b).  However, given the Court's conclusion that Plaintiff's claim is preempted by HOLA, the issue of whether Plaintiff's fraud claim is sufficiently pled is moot.

for conflicting state laws.  <u>Fidelity</u>, 458 U.S. at 152-154; <u>Silvas</u>, 514 F.3d as 1007 n.3 (citing <u>Rice v. Santa Fe Elev. Corp.</u>, 331 U.S. 218, 230 (1947)).[5]

To clarify the scope of HOLA's preemption, section 560.2(b) sets forth a non-exhaustive list of illustrative examples of the types of state laws that are expressly preempted, including:

> (4) *The terms of credit, including amortization of loans* and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;
> …
> (9) *Disclosure and advertising*, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;
>
> (10) Processing, *origination*, servicing, sale or purchase of, or investment or participation in, mortgages;

12 C.F.R. § 560.2.

A claim or state statute may be preempted by HOLA on an "as applied" or case-specific basis.  <u>See</u> <u>Silva</u>, 514 F.3d at 1006.  To determine whether a claim is preempted, "the first step will be to determine whether the type of law in question is listed in paragraph (b)."  <u>Silvas</u>, 514 F.3d at 1005.  If so, the state law is preempted.  <u>Id.</u>  Even state laws of general applicability, such as tort, contract, and real property laws, are preempted if their enforcement would impact federal savings associations in areas listed in § 560.2(b).  <u>Id.</u> at 1006; 12 C.F.R. § 560.2(c).  Alternatively, even if such laws are not covered by § 560.2(b), they may nonetheless be preempted if they have more than an incidental effect on the lending operations of a federal savings association.  12 C.F.R. §§ 560.2(c).

---

[5] Plaintiff does not dispute Wachovia's contention that at the time of Plaintiff's loan origination, World Savings, which in 2007 became known as Wachovia, was a federal savings bank regulated by the OTS.  <u>See</u> Def.'s RJN Ex. A-D.

Here, Plaintiff's fraud allegations, which concern the loan origination process and World Savings' disclosure obligations, are encompassed by the § 560.2(b)(4), which preempts claims based on the "terms of credit, including amortization of loans"; § 560.2(b)(9), which applies to "disclosure and advertising"; and § 560.2(b)(10), which applies to "origination … of … mortgages."  See Appling v. Wachovia Mortg., FSB, --- F. Supp. 2d ---, 2010 WL 3743770, at *7 (N.D. Cal. Sept. 17, 2010) (finding that negligent misrepresentation claim based on failure to disclose negative amortization provision and failure to provide the borrower with the loan documentation in advance or the opportunity to review the documents was preempted by § 560.2(b)(9)); Bassett v. Ruggles, No. CV-F-09-528 OWW/SMS, 2010 WL 1525554 at *21 (E.D. Cal., April 15, 2010) (claim that mortgagees by they "were tricked into signing documents for a loan that was misrepresented to them and was above par" preempted by HOLA) (citing 12 C.F.R. § 560.2(b)(4) and (10)).  Thus, the Court finds that as pled, Plaintiff's fraud claim is preempted by HOLA.

### C. SECOND CAUSE OF ACTION FOR UNFAIR BUSINESS PRACTICES

#### 1. Overview

The UCL makes actionable any "unlawful, unfair or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200.  "Each prong of the UCL is a separate and distinct theory of liability."  Birdsong v. Apple, Inc., 590 F.3d 955, 959 (9th Cir. 2009).  "[A]n action based on [the UCL] to redress an unlawful business practice 'borrows' violations of other laws and treats these violations . . . as unlawful practices, independently actionable under section 17200 et seq. and subject to the distinct remedies provided thereunder."  Farmers Ins. Exch. v. Super. Court, 2 Cal.4th 377, 383 (1992) (internal quotations and citations omitted); Chabner v. United Omaha Life Ins. Co., 225 F.3d 1042, 1048 (9th Cir. 2000).  The violation of almost any federal, state, or local law may serve as the basis for a UCL claim.  Saunders v. Superior Court, 27 Cal.App.4th 832, 838-39 (1994).

As noted, Plaintiff's UCL claim is based on three independent statutory violations.  FAC ¶¶ 28-48.  Specifically, the FAC alleges that World Savings wrongfully rejected her

1  request for rescission under TILA and improperly reported derogatory credit information in
2  violation of RESPA and/or TILA. See FAC ¶¶ 30-31, 38-39.  The third alleged violation is
3  directed at GSF, which allegedly failed to translate her loan documents into Spanish, as
4  required by California Civil Code § 1632.  See id. ¶ 41.  Since the instant motion is brought
5  by Wachovia, the Court addresses only the first two alleged violations.

### 2. TILA

The party seeking relief in a federal court action "bears the burden of showing that he has standing for each type of relief sought." Summers v. Earth Island Inst., --- U.S. ---, 129 S.Ct. 1142, 1149 (2009). The doctrine of standing has both constitutional and prudential (i.e., non-constitutional) components. See Nuclear Info. & Res. Serv. v. Nuclear Regulatory Comm'n, 457 F.3d 941, 950 (9th Cir. 2006). Constitutional standing pertains to Article III's case or controversy requirement. Friends of the Earth, Inc. v. Laidlaw Envtl. Sys. (TOC), Inc., 528 U.S. 167, 180-81 (2000) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)). Prudential standing considers whether "a particular plaintiff has been granted a right to sue by the statute under which he or she brings suit." City of Sausalito v. O'Neill, 386 F.3d 1186, 1199 (9th Cir. 2004). The issue now before the Court pertains to Plaintiff's prudential standing under the UCL.

"Historically, the UCL authorized any person acting for the interests of the general public to sue for relief notwithstanding any lack of injury or damages." Durell v. Sharp Healthcare, 183 Cal.App.4th 1350, 1359 (2010); see also Californians for Disability Rights v. Mervyn's, LLC, 39 Cal.4th 223, 227 (2006). In 2004, however, California voters passed Proposition 64, which significantly limited private standing under the UCL. In re Tobacco II Cases, 46 Cal.4th 298, 316 (2009). "After Proposition 64, ... a private person has standing to sue only if he or she 'has suffered [an] injury in fact and has lost money or property as a result of such unfair competition.'" Californians for Disability Rights, 39 Cal.4th at 227 (quoting Cal. Bus. & Prof.Code § 17204). "To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic

injury, and (2) show that that economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." Kwikset Corp. v. Superior Court, -- Cal.4th --, 2011 WL 240278, at *5 (Jan. 27, 2011).

Wachovia argues that Plaintiff lacks standing because she has not alleged that she lost any money or property as a result of its allegedly unfair business practices. Def.'s Mot. at 14. This contention is partially correct. With respect to her TILA rescission claim, Plaintiff alleges that she has been "actually damaged in that [she] was forced to incur *fees and costs in bringing this action* and experienced *negatively amortized balance* prior to plaintiff's loan modification…." FAC ¶ 36 (emphasis added). Plaintiff fails to cite any authority establishing that attorney's fees incurred in bringing a UCL claim are sufficient to confer standing under § 17204. Under Plaintiff's reasoning, a private plaintiff bringing a UCL claim automatically would have standing merely by filing suit. Plaintiff's ancillary allegation that she was damaged by experiencing a negative amortization likewise fails to show that Plaintiff suffered any loss of money or property resulting from Wachovia's conduct. Indeed, Plaintiff appears to acknowledge that the loan modification ameliorated whatever ill effects of the negative amortization she might have experienced. Based on the above, the Court finds that Plaintiff has failed to allege facts sufficient to establish standing under the UCL based on her claim that Wachovia wrongfully failed to rescind her original loan.

Next, Wachovia contends that even if Plaintiff has standing under the UCL, her TILA-based claim, as alleged, is preempted by HOLA. As discussed, Plaintiff alleges that she was entitled to rescind her original mortgage on the grounds that her TILA disclosure statement incorrectly disclosed her finance charge, and that she has never been provided with "correct" TILA disclosure statement. See FAC ¶¶ 34-35. Because the alleged TILA violation is based on allegedly inadequate disclosures at the time of the loan origination, it falls within the purview of § 560.2(b)(9) and (b)(10). See Appling, 2010 WL 3743770, at *8 ("To the extent that the UCL claim is predicated on violations of TILA and FCRA, it is based on allegations that Defendants failed to disclose credit-related information and

therefore falls into the category of preempted state laws listed in § 560.2(b)(9)."); Newsom v. Countrywide Home Loans, Inc., 714 F. Supp. 2d 1000, 1006-08 (N.D. Cal. 2010) (finding that HOLA preempted claim alleging that defendant failed to provide disclosures required by TILA, and misrepresented interest rates and fees).

### 3. Wrongful Credit Reporting

As noted, Plaintiff's second UCL claim against Wachovia is for wrongful reporting to credit bureaus. The Court disagrees with Wachovia's assertion that Plaintiff lacks standing with respect to her second UCL claim for wrongful credit reporting. In particular, Wachovia ignores Plaintiff's allegations that she "incurred higher interest rates and payments as a result of Defendants [sic] wrongful credit reporting." FAC ¶ 39. The Court finds that this allegation is sufficient to establish standing at this stage of the litigation. See Brewer v. Indymac Bank, 609 F. Supp. 2d 1104, 1123 (E.D. Cal. 2009) (finding allegations that plaintiffs' were compelled to pay a higher interest rate on their loans as a result of defendants actions sufficient to establish standing under the UCL).

As an alternative matter, Wachovia argues that the alleged RESPA violation is preempted by HOLA. RESPA imposes certain disclosure obligations on loan servicers who transfer or assume the servicing of a federally related mortgage loan. 12 U.S.C. § 2605(b). Under section 2605(e), a loan servicer "who receives a qualified written request [or QWR] from the borrower (or an agent of the borrower) for information relating to the servicing of such loan" is required to provide the borrower with a written acknowledgment of receipt within twenty days. Id. § 2605(e)(1)(A). During the sixty day period following the loan servicer's receipt of a QWR, the servicer is barred from reporting any overdue payments to any credit agency. 12 U.S.C. § 2605(e)(3).

Plaintiff alleges that despite never resolving her QWR, Wachovia reported her to the credit bureaus as being delinquent. FAC ¶ 37. Plaintiff similarly alleges that Wachovia should not have reported any delinquencies, given that she had sought rescission under TILA. Id. ¶ 38. In its motion, Wachovia summarily asserts that Plaintiff's wrongful credit reporting claim relates to loan servicing, and therefore, is preempted by § 560.2(b)(10).

1  Def.'s Mot. at 5.  However, Wachovia fails to provide any legal analysis or cite any
2  decisional authority to support its argument.  It is not the role of the Court to make parties'
3  arguments for them.  See Indep. Towers of Wash. v. Wash., 350 F.3d 925, 929 (9th Cir.
4  2003) ("Our adversarial system relies on the advocates to inform the discussion and raise
5  the issues to the court.").  Therefore, the Court declines to find, at this juncture, that
6  Plaintiff's second cause of action is preempted by HOLA, insofar as it is premised on
7  wrongful credit reporting.[6]

### D. THIRD CAUSE OF ACTION FOR AN ACCOUNTING

"A cause of action for an accounting requires a showing that a relationship exists between the plaintiff and defendant that requires an accounting, and that some balance is due the plaintiff that can only be ascertained by an accounting."  Teselle v. McLoughlin, 173 Cal.App.4th 156, 179 (2009).  In her third cause of action, Plaintiff alleges that "[t]he amount of money [she] may owe WACHOVIA or other defendants is unknown to [her] and cannot be determined without an accounting."  FAC ¶ 50.  As pled, this claim is preempted by § 560.2(b)(4), which governs the "terms of credit," including the "balance [and] payments due…." 12 C.F.R. § 560.2(b)(4).  Plaintiff's accounting claim is therefore dismissed.

### E. MOTION TO STRIKE

Under Rule 12(f), the Court has discretion to strike "an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  The purpose of a motion to strike is to "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial."  Sidney-Vinstein v. A.H.

---

[6] For the parties' benefit, the Court notes that Plaintiff has failed to allege sufficient facts to establish a violation of RESPA. Plaintiff alleges no facts regarding the circumstance surrounding her alleged QWR, such as when it was sent and what issues it raised.  In addition, it is unclear what authority supports Plaintiff's wrongful credit reporting claim insofar as it is based on TILA.  However, since Defendants did not make this argument in their motion, the Court declines to do so sua sponte.  See Karamanos v. Egger, 882 F.2d 447, 452 n. 2 (9th Cir. 1989) (noting that a court may not sua sponte dismiss a claim without affording the plaintiff an opportunity to respond).

- 12 -

1  Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  "Immaterial matter is that which has no
2  essential or important relationship to the claim for relief or the defenses being plead."
3  Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 974 (9th Cir. 2010) (internal
4  quotations and citation omitted).  "Impertinent matter consists of statements that do not
5  pertain, and are not necessary, to the issues in question."  Id. (internal quotations and
6  citations omitted).
7       Wachovia moves to strike Plaintiff's claims for emotional distress and punitive
8  damages and for declaratory relief on the ground that such relief is legally unavailable.  The
9  Ninth Circuit has held that Rule 12(f) cannot be utilized in that manner.  Whittlestone, 618
10  F.3d at 971 ("We therefore hold that Rule 12(f) does not authorize district courts to strike
11  claims for damages on the ground that such claims are precluded as a matter of law." ).
12  The Court also rejects Wachovia's request to strike allegations regarding a 60 Minutes
13  episode in which a former World Savings executive, Paul Bishop, was interviewed
14  regarding World Saving's allegedly fraudulent loan practices.  See FAC ¶ 19.  This
15  allegation relates to Plaintiff's contention that World Savings was responsible for GSF's
16  submission of a falsified loan application in order to place her in a loan which allowed for
17  negative amortization.  See id. ¶ 20.  Accordingly, Wachovia's motion to strike is
18  DENIED.

19  **IV.    CONCLUSION**
20       For the reasons stated above,
21       IT IS HEREBY ORDERED THAT:
22       1.    Wachovia's motion to dismiss (Dkt. 32) is GRANTED IN PART and
23  DENIED IN PART.  The motion is GRANTED as to Plaintiff's claims for fraud, violation
24  of the UCL based on rescission under TILA, and for an accounting.  The motion is
25  DENIED with respect to Plaintiff's UCL claim to the extent that it is based on wrongful
26  credit reporting.  Plaintiff is granted leave to amend to the extent that she, in good faith, and
27  consistent with Federal Rule of Civil Procedure 11, can allege claims that are not
28  preempted by HOLA and that otherwise cure the deficiencies discussed above.  Plaintiff

shall have twenty (20) days from the date this Order is filed to file a Second Amended Complaint.  In the event Plaintiff fails to timely amend her pleadings, all claims alleged against Wachovia and Wells Fargo, except for the second cause of action for wrongful credit reporting under the UCL, will be deemed dismissed with prejudice.

     2. Wachovia's motion to strike (Dkt. 33) is DENIED.

     3. Within fourteen (14) days of this Order, Plaintiff shall effect service on GSF and file a Certificate of Service with the Court.  Alternatively, Plaintiff may file a stipulation (or request, if no stipulation can be obtained) to dismiss GSF from the action, without prejudice.

     4. Absent prior leave of Court, any additional motions and oppositions thereto shall be limited to fifteen (15) pages and replies are limited to ten (10) pages.

     5. If the parties have not already done so, they shall conduct their Rule 26(f) conference within twenty days of the date this Order is filed, and may thereafter commence discovery.

     6. The parties shall appear for a telephonic Case Management Conference on **May 25, 2011 at 3:00 p.m.**  The parties shall meet and confer prior to the conference and shall prepare a joint Case Management Conference Statement which shall be filed no later than ten (10) days prior to the Case Management Conference.  The statement shall comply with the Standing Order for All Judges of the Northern District of California and the Standing Order of this Court.  Plaintiff shall be responsible for filing the statement as well as for arranging the conference call.  All parties shall be on the line and shall call (510) 637-3559 at the above indicated date and time.

     7. This Order terminates Docket 32 and 33.

IT IS SO ORDERED.

Dated: March 4, 2011

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge